UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| B.C., individually and on behalf of R.C., a minor,<br><br>               Plaintiffs,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, UNITED BEHAVIORAL HEALTH, and the CNA RETIREE CONSUMER DRIVEN HEALTH PLAN,<br><br>               Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART [84] PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**<br><br>Case No. 2:21-cv-00032-DBB<br><br>District Judge David Barlow |

Before the court is Plaintiff's Motion for Attorney's fees.[1]

**BACKGROUND**

This case involves an insurance coverage dispute arising under the Employee Retirement Income Security Act of 1974 ("ERISA").[2] Plaintiff alleged that R.C., a minor, received mental health care at a residential treatment facility beginning in June 2019 that was covered by an ERISA Plan and that Defendants improperly denied coverage.[3] Plaintiff brought claims for ERISA violations and for violations of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA").[4] The parties filed cross motions for summary judgment in October 2022. In her motion, Plaintiff argued that Defendant's coverage denials were arbitrary and capricious and

---

[1] Mot. Attorney's fees ("Fee Motion"), ECF No. 84, filed Feb. 16, 2026.
[2] 29 U.S.C. §1001 *et. seq*.
[3] Amended Compl. ¶¶ 1–5.
[4] *Id*. ¶¶ 43–85.

1

that Defendants violated the MHPAEA.[5] In their motion, Defendants argued that their adverse benefit determination was not arbitrary and capricious under ERISA.[6] Defendants also argued that, in the event the court "rule[d] in favor of Plaintiffs," the matter should be remanded for further consideration.[7]

On January 10, 2024, the court entered an order denying Defendants' motion and granting in part Plaintiff's motion.[8] The court held that Defendant United Behavioral Health ("United") acted arbitrarily in denying Plaintiff's claim by (1) failing to address the opinions of R.C.'s treating caregivers, even when explicitly asked to do so by Plaintiff[9] and by (2) making inaccurate statements about the likelihood that R.C.'s problems would threaten his or others' safety that were contradicted by the administrative record.[10] In light of United's failure to adequately explain the basis for the denial, the court remanded the case for further evaluation and did not reach the merits of the MHPAEA claim.[11] Following remand, United reversed its denial of the claim for the treatment period from June 17, 2019, through June 29, 2020, but maintained that additional treatment was not covered.[12] Subsequently, United reversed its denial of the remaining treatment period from June 30, 2020, through January 20, 2021.[13] Plaintiff now seeks attorney's fees and interest.[14]

---

[5] Pl. Mot. Summ. Judgment ("Pl. MSJ") 32, 35, ECF No. 62, filed Oct. 14, 2022.
[6] Def. Mot. Summ. Judgment ("Def. MSJ") 18, ECF No. 60, filed Oct. 14, 2022.
[7] *Id.* at 40.
[8] Order Denying and Granting in Part Mot. Summ. Judgment ("MSJ Order"), ECF No. 82, entered Jan. 10, 2024.
[9] *Id.* at 8–9.
[10] *Id.* at 10–12.
[11] *Id.* at 13.
[12] Fee Motion 2–3; September 4, 2024, Letter on Remand Review, ECF No. 93-2, filed Apr. 29, 2026.
[13] Fee Motion 3; November 27, 2024, Letter on Remand Review, ECF No. 93-3, filed Apr. 29, 2026.
[14] *See* Fee Motion.

**STANDARD**

In an ERISA action, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."[15] "A fee claimant need not be a prevailing party to be eligible for an award of attorney's fees and costs under ERISA."[16] Instead, a court may award fees and costs under § 1132(g)(1), "as long as the fee claimant has achieved 'some degree of success on the merits.'"[17] The Tenth Circuit Court of Appeals has established five factors a court may consider in deciding whether to exercise its discretion to award attorney's fees and costs under ERISA:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of fees; (3) whether an award of fees would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.[18]

"No single factor is dispositive and a court need not consider every factor in every case."[19] Further, "[t]he award of prejudgment interest is considered proper in ERISA cases" and is "appropriate when its award serves to compensate the injured party and its award is otherwise equitable."[20]

**DISCUSSION**

Plaintiff requests (1) the payment of the ERISA benefits that Defendants have approved, (2) prejudgment interest on the benefits, and (3) attorney's fees and costs.[21]

---

[15] 29 U.S.C.A. § 1132(g)(1).
[16] *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1207 (10th Cir. 2013).
[17] *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)).
[18] *Cardoza*, 708 F.3d 1196 at 1207.
[19] *Id.*
[20] *Allison v. Bank One-Denver*, 289 F.3d 1223, 1243 (10th Cir. 2002), *as amended on denial of reh'g* (June 19, 2002).
[21] *See* Fee Motion 1.

## I.    Benefits

Plaintiff first asks the court to order payment of the $356,718 in benefits that Defendants approved for R.C.'s treatment.[22] She contends that, though Defendants approved coverage in this amount, they have not yet paid the benefits, so an order that the payment be made is necessary.[23] Defendants agree that the amount of benefits owed for approved coverage between June 17, 2019, and January 21, 2021, is $356,718.[24] In the absence of any dispute, the court orders that Defendants pay Plaintiff the benefits owed.

## II.    Prejudgment Interest

Plaintiff next asks the court to order payment of prejudgment interest in the amount of 10% per annum on the unpaid claims for benefits.[25] She argues that prejudgment interest is appropriate because Defendants retained the benefits of the funds rightfully owed to Plaintiff during the years between the covered treatment and the final decision to approve benefits.[26] Plaintiff also argues that a 10% rate is appropriate under Utah law, which states that "the legal rate of interest for [a] contract, including a contract for services, a loan or forbearance of any money, goods, or services, or a claim for breach of contract is 10% per annum" unless the parties expressly specify a different rate.[27] Plaintiff proposes that the interest be calculated at $97.73 per day[28] beginning sixty days after the midpoint of the treatment period.[29] She argues that this date

---

[22] *Id.* at 2–3.

[23] *Id.* at 3.

[24] Opposition to Motion for Attorney's fees ("Opp'n") 4, ECF No. 93, filed Apr. 29, 2026.

[25] Fee Motion 3.

[26] *Id.* at 5.

[27] Utah Code Ann. § 15-1-1(2).

[28] Calculated by taking 10% of the $356,718 benefits owed for a total of $35,671.80 in interest per annum and then dividing it by 365 days per year to get $97.73 of interest owed per day on the total benefits.

[29] Fee Motion 5. Plaintiff further explains that, as of the date of her motion, 2,082 days have elapsed from the interest start date. *Id.* This places the proposed date to begin calculating interest approximately on June 5, 2020.

is a reasonable time frame from the beginning of treatment and the initial claim to begin assessing interest.[30]

Defendants respond that Plaintiff is only entitled to interest if she can show that she paid for some of the treatment herself, which has not been demonstrated.[31] They also argue that, if the court awards some measure of prejudgment interest, it should only begin to accrue from the date of the remand determinations that approved benefits because Plaintiff failed to make a sufficient medical necessity showing before then.[32] Finally, Defendants contend that Utah's 10% rate is too high and would result in a "windfall" to Plaintiff, so they propose that any interest be calculated using the federal prime rate.[33]

### A.    Award of Prejudgment Interest

The court first considers whether prejudgment interest is appropriate in this case. The award of prejudgment interest in an ERISA case is governed by a two-step analysis.[34] Courts must first "determine whether the award of prejudgment interest will serve to compensate the injured party" and then "determine whether the equities would preclude the award of prejudgment interest."[35] Here, Defendants argue that prejudgment interest is inappropriate absent a showing that Plaintiff paid out-of-pocket for any of the services billed.[36] But Defendants provide no authority for their position. And, in ERISA cases, some courts have expressly found

---

[30] *Id*. at 5 n.10.
[31] Opp'n 17–18.
[32] *Id.* at 18.
[33] *Id.*
[34] *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1286 (10th Cir. 2002).
[35] *Id.* (quoting *Eastman Kodak Co. v. Westway Motor Freight, Inc.*, 949 F.2d 317, 321 (10th Cir. 1991)).
[36] Opp'n 17–18.

that "an award of prejudgment interest is not contingent on such a showing."[37] In this case,

Plaintiff was entitled to benefit payments for covered treatment beginning in 2019 but still had

not received any benefit payments at least as of February 2026. Plaintiff was deprived of those

benefit payments for several years and may be compensated by prejudgment interest.

Furthermore, equity weighs in favor of prejudgment interest because Defendants have retained

use of those funds that properly belonged to Plaintiff for several years. Thus, an award of

prejudgment interest is appropriate here.

### B.       Rate and Accrual

Next, the court considers an appropriate interest rate. Defendants argue that a 10% rate

would essentially constitute punitive damages against them and that the lower federal rate is

more appropriate.[38] It is true that "punitive damages are not available in an ERISA action,"[39] and

that "[p]rejudgment interest is intended to make the plaintiffs whole, not to punish the

fiduciary."[40] But Plaintiff's proposed rate in this case is reasonable and does not rise to the level

of punitive damages. As Plaintiff notes, Utah law specifically establishes a 10% interest rate for

contracts.[41] The Tenth Circuit has previously approved even higher interest rates in ERISA cases

when specified by state law.[42] Furthermore, courts in this district routinely apply Utah's 10%

---

[37] *K.S. v. Cigna Health & Life Ins. Co.*, No. 1:22-CV-00004, 2026 WL 752700, at *4 (D. Utah Mar. 17, 2026) (rejecting the argument that prejudgment interest is inappropriate in an ERISA case when a plaintiff presents no evidence that he or she personally paid for treatment).

[38] Opp'n 19.

[39] *Allison v. Bank One-Denver*, 289 F.3d 1223, 1243 (10th Cir. 2002), *as amended on denial of reh'g* (June 19, 2002).

[40] *Ramos v. Banner Health*, 1 F.4th 769, 778 (10th Cir. 2021).

[41] Utah Code Ann. § 15-1-1(2).

[42] *See Weber v. GE Grp. Life Assur. Co.*, 541 F.3d 1002, 1016 (10th Cir. 2008) (affirming a 15% interest rate "specified by Oklahoma law" because the statutory rate was of "broad applicability" and did not seem to be punitive).

6

rate in ERISA cases.[43] Defendants also argue "the federal rate is a more accurate reflection of what would be fair because no investment during the time in issue was offering a return of 10%." But that argument is unsupported.[44] The court finds it appropriate to award the Plaintiff prejudgment interest at a rate of 10%.

Finally, the court must determine when the prejudgment interest began to accrue. Plaintiff proposes a starting point "[m]easured from 60 days after the midpoint of the treatment period," or "2082 days" before the filing of the motion for attorney's fees.[45] Defendants argue that interest should only run from the date of their remand determinations because Plaintiff did not make "a sufficient medical necessity showing . . . at the time of her original claim and appeal submissions."[46] Defendants' argument is a non-starter. The Tenth Circuit has said that prejudgment interest should run from the date a plaintiff first files a claim for benefits to which he or she is entitled because the plaintiff has been denied use of those benefits as of that date.[47] In this case, Plaintiff was entitled to benefits after the meritorious claim was filed. It is not her fault that United initially failed to address the opinions of the treating caregivers or adequately assess medical necessity and thus denied her claim until years after treatment was complete.[48] Because Plaintiff's proposal is reasonable and Defendants' is not, the court adopts Plaintiff's approach.

---

[43] *See Charles W. v. Regence BlueCross BlueShield of Oregon*, No. 2:17-CV-00824-TC, 2019 WL 6220060, at *1–2 (D. Utah Nov. 21, 2019) (finding that § 15-1-1 applies to unpaid ERISA claims and collecting cases that use its 10% rate); *see also Krum v. Hartford Life & Acc. Ins. Co.*, 942 F. Supp. 2d 1171, 1186 (D. Utah 2013) (applying the 10% rate); *K.S. v. Cigna Health & Life Ins. Co.*, No. 1:22-CV-00004, 2026 WL 752700, at *5 (D. Utah Mar. 17, 2026) (same).

[44] Additionally, the district court case Defendants cite noting a low interest rate environment is from 2019, whereas the relevant time period here spans 2020 to the present, a time period where interest rates have varied. *See* Opp'n 19.

[45] Fee Motion 5.

[46] Opp'n 18.

[47] *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1287 (10th Cir. 2002).

[48] *See* MSJ Order 8–12.

7

### III.     Attorney's Fees

Plaintiff also requests attorney's fees at rates of $650 per hour for Brian King, $450 per hour for Brent Newton, $400 per hour for Samuel Hall, and $300 per hour for Andrew Somers.[49] Plaintiff requests a total of $86,935 of fees for approximately 169 hours of work among these four attorneys.[50] Defendant argues that Plaintiff is not entitled to attorney's fees because she did not achieve any "success on the merits,"[51] and that if attorney's fees are awarded, the hours billed and Mr. King's rate are excessive and should be reduced.[52]

### A.     Some Degree of Success on the Merits

In an ERISA case, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party" under 29 U.S.C. § 1132(g)(1).[53] The Supreme Court has further clarified that a court may only award fees and costs under § 1132(g)(1), "as long as the fee claimant has achieved 'some degree of success on the merits.'"[54] In this case, Defendants argue that Plaintiff did not achieve any success on the merits because the court merely remanded the action for further determination following summary judgment rather than entering an award of benefits.[55] Plaintiff replies that she achieved success because the court agreed with her that Defendants violated ERISA through arbitrary and capricious denials of her claim.[56]

---

[49] *Id.* at 10.
[50] *Id.* at 12.
[51] Opp'n 4.
[52] *Id.* at 13–17.
[53] 29 U.S.C.A. § 1132(g)(1).
[54] *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010) (quoting *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 694 (1983)).
[55] Opp'n 4.
[56] Reply in Support of Mot. Attorney's fees ("Reply") 6–7, ECF No. 94, fled May 13, 2026.

A remand order by itself may not always constitute some success on the merits.[57] However, "[d]istrict courts routinely hold that a determination that an insurer has arbitrarily and capriciously rejected a claim, paired with a remand, is enough to warrant an award of attorney's fees."[58] In this case, the court agreed with Plaintiff that United violated ERISA and acted arbitrarily by failing to engage with the medical opinions of R.C.'s treating professionals and by failing to address medical necessity based on relevant evidence in the administrative record.[59] Here, even though the court did not award benefits, remand based on a finding that Defendants' actions were arbitrary and capricious represents substantial success on the merits.[60]

## B.     Five-Factor Test

Having determined that the court may award attorney's fees because Plaintiffs achieved some success on the merits, the court now considers each of the five factors established by the Tenth Circuit.[61]

### 1.     Culpability or Bad Faith

First, the court considers the degree of Defendants' culpability or bad faith. Plaintiff argues that United acted culpably by abusing its discretion in denying her claims without

---

[57] *See Manna v. Phillips 66 Co.*, 820 F. App'x 695, 703 (10th Cir. 2020) (unpublished) ("Accordingly, on these facts we cannot say that a remand order alone constitutes some success on the merits."); *see also L.E. v. Deseret Mut. Benefit Adm'rs*, No. 2:20-CV-00707-RJS-DBP, 2023 WL 4083381, at *13 (D. Utah June 20, 2023) (finding that a plaintiff "ha[d] not achieved much success on the merits" and was not owed attorney's fees when the matter was remanded solely because the plaintiff had failed to exhaust her administrative remedies under the plan but that failure was excused under the circumstances).

[58] *Theo M. v. Beacon Health Options, Inc.*, No. 2:19-CV-00364-JNP-DBP, 2023 WL 4826771, at *3 (D. Utah July 27, 2023).

[59] MSJ Order 8–12.

[60] *See Theo M.*, 2023 WL 4826771, at *3 (finding that remand did constitute some success on the merits for the plaintiff when the court also determined that the defendant ignored plaintiff's treatment providers and failed to adequately explain the reasoning for its denial).

[61] *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1207 (10th Cir. 2013).

meeting ERISA's minimum standards.[62] Defendants respond that their conduct was not culpable because the court's order made no such finding and because the court did not find on summary judgment that benefits were owed.[63]

Courts in the Tenth Circuit have found culpability where a party acted in a way that was "wrong or irresponsible," even if the party did not "act with malice or guilty purpose in denying claims for benefits."[64] "In the District of Utah, courts have determined that a plan administrator 'acted *culpably* by applying the wrong criteria in evaluating the medical necessity of [plaintiff's] residential care, ignoring the opinions of [plaintiff's] treating physicians, and proposing post hoc rationale to justify the denial of the Plaintiffs' claims.'"[65] In this case, the court determined that United effectively shut its eyes to readily available medical information at multiple levels of review because it failed to address opinions of R.C.'s treating caregivers that were specifically brought to its attention.[66] In doing so, United failed to engage in meaningful dialogue as required by ERISA and acted arbitrarily.[67] Furthermore, the court specifically found that United's denial contradicted the record by indicating that R.C.'s problems did not raise safety concerns, an inaccurate statement in light of numerous documented incidents of physical aggression.[68]

Taken together, these considerations readily support finding culpability here. It was United's failure to comply with ERISA requirements and engage in meaningful dialogue and full

---

[62] Fee Motion 7.
[63] Opp'n 6.
[64] *Chandhok v. Companion Life Ins. Co.*, 556 F. Supp. 3d 1192, 1222 (D.N.M. 2021).
[65] *Theo M.*, 2023 WL 4826771, at *4 (quoting *James F. ex rel. C.F. v. CIGNA Behavioral Health, Inc.*, No. 1:09-cv-70, 2011 WL 2441900, at *2 (D. Utah June 15, 2011)); *see also Foust v. Lincoln Nat'l Life Ins. Co.*, No. 2:17-CV-01208-TC, 2019 WL 6223822, at *1 (D. Utah Nov. 21, 2019) ("In particular, the court notes that it found Lincoln's denial to be not only incorrect, but arbitrary and capricious, suggesting a level of blameworthiness that goes beyond a mistaken or negligent denial of a claim.).
[66] MSJ Order 8–10.
[67] *Id.* at 10.
[68] *Id.* at 11–12.

and fair review in the first instance that made the current proceedings necessary.[69] And courts in this district routinely find that failure to engage with a plaintiff's treating physicians or to provide a rationale to justify denying benefits is sufficient for a finding of culpability.[70] Defendants attempt to distinguish these cases by arguing that the court did not find in its previous order that Defendants refused to engage with Plaintiffs' evidence or treating physicians,[71] yet that was the principal basis for the court's ruling.[72] The court found that United did not consider the treating physicians' opinions, even after those opinions were specifically brought to United's attention.[73] On this record, the first factor weighs heavily in favor of awarding attorney's fees.

### 2.    Defendants' Ability to Satisfy an Award of Fees

Second, the court considers the opposing party's ability to satisfy an award of fees. Defendants do not dispute that they are able to satisfy an award of fees, though they argue that this factor is of little importance in most cases and should not carry much weight in the court's determination.[74] Consequently, this factor favors an award of attorney's fees.

### 3.    Deterrent Effect

Third, the court considers whether an award of fees would deter others from acting under similar circumstances. Plaintiff argues that an award of fees would deter other insurers from

---

[69] *See Anne A. v. United Healthcare Ins. Co.*, No. 2:20-CV-00814-JNP, 2026 WL 811540, at *14 (D. Utah Mar. 24, 2026) (unpublished).

[70] *See K.S. v. Cigna Health & Life Ins. Co.,* No. 1:22-CV-00004, 2026 WL 752700, at *2 (D. Utah Mar. 17, 2026) (unpublished); *see also R.E. v. Blue Cross Blue Shield of Illinois*, No. 2:22-CV-00296-RJS-DBP, 2023 WL 8936274, at *14 (D. Utah Dec. 27, 2023) ("Although the court has not ruled [Defendant] acted in bad faith in denying benefits . . ., it is certainly culpable for its failure to properly evaluate Plaintiffs' claim and for its significant procedural deficiencies.").

[71] Opp'n 7.

[72] *See* MSJ Order 8–12.

[73] *Id.*

[74] Opp'n 8–9.

11

improperly denying benefits and failing to comply with ERISA's requirements.[75] Defendants respond that the court did not find that United's denial was wrong, only that United's explanation was deficient.[76] Defendants further contend that awarding attorney's fees here could actually lead other insurers to uphold benefit denials on remand to avoid the imposition of fees.[77]

Defendants' argument ignores that the court did find that United's denial was wrong because it failed to meet ERISA's minimum standards. And their argument that a fee award could encourage other insurers to uphold denials for fear of fee awards misses the point. Even if the fee denial here had been upheld on remand, attorney's fees still would have been imposed based on United's failure to engage with the record and with R.C.'s treating physicians in violation of the law.[78] United's initial review and denial was arbitrary and capricious because it failed to meet ERISA's minimum standards, regardless of whether or not the denial was ultimately upheld or reversed. It is that failure that the court seeks to deter in future cases. This factor also weighs in favor of awarding attorney's fees.

### 4.    Benefit to All Participants

Fourth, the court considers whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA. Plaintiff argues that the court reminded Defendants that ERISA requires a full and fair review.[79] Defendants contend that this action benefits only Plaintiff and does not resolve

---

[75] Fee Motion 7–8.
[76] Opp'n 9–10.
[77] *Id.* at 10.
[78] *See C.J. v. United Healthcare Ins. Co.*, No. 2:22-CV-00092-DBB-CMR, 2026 WL 1678251, at *4 (D. Utah June 10, 2026) (awarding fees even when a benefits denial was upheld on remand because court review was only necessary due to the defendant's failure to satisfy ERISA's foundational requirements).
[79] Fee Motion 8.

any significant legal questions.[80] The court concludes that Plaintiff was not primarily seeking to benefit all plan participants or resolve an important question. Although the court's order discussed ERISA's minimum requirements for an adequate claims-processing procedure, such requirements were already well-established. Defendants simply failed to follow them. Thus, this case did not resolve any important legal questions. This factor weighs against an award of attorney's fees.

### 5.    Relative Merits of the Parties' Positions

Fifth, the court considers the relative merits of the parties' positions. This factor relates closely to the first factor.[81] Defendants argue that, because Plaintiff asked the court to award benefits rather than remand on summary judgment, her position lacked merit.[82] Defendants further contend that, because they requested remand in the event of an arbitrary and capricious finding, their position was meritorious.[83] This argument confuses remedy with legal conclusion. Though the court determined that remand was the proper *remedy* following its summary judgment determination,[84] the court's *legal conclusion* was that Plaintiff's position—that Defendants' had violated ERISA—was meritorious.[85] The court denied Defendants' motion for summary judgment in its entirety while partially granting Plaintiff's motion and finding that United's review was arbitrary and capricious.[86] Furthermore, Defendants ultimately reversed their denial on remand. Plaintiff's position was clearly more meritorious, whereas the court

---

[80] Opp'n 10.
[81] *Harvey T. v. Aetna Life Ins. Co.*, 508 F. Supp. 3d 1088, 1103 (D. Utah 2020).
[82] Opp'n 11.
[83] *Id.* at 11–12.
[84] MSJ Order 13.
[85] *Id.* at 8–12.
[86] *Id.* at 13–14.

rejected Defendants' substantive arguments in their entirety. This factor weighs in favor of awarding attorney's fees.

Overall, after weighing each relevant factor, the court determines that attorney's fees are well warranted in this case.

### C.   Hours Billed

Defendants next take issue with the amount of time billed by Plaintiff's attorneys.[87] Defendants argue that the court should reduce Plaintiff's requested attorney's fees by 50% at the outset because the court did not reach the merits of Plaintiff's MHPAEA claim.[88] Defendants also ask the court to reject specific time entries related solely to the MHPAEA claim.[89] Plaintiff responds that a 50% reduction is inappropriate because her claims involved a common core of facts that required counsel to spend time on the litigation as a whole.[90]

A broad 50% reduction of all fees is not appropriate here. As Plaintiff notes, much of the work done in the case involves "a common core of facts" and "related legal theories."[91] This makes it "difficult to divide the hours expended on a claim-by-claim basis" because "much of counsel's time [was] devoted generally to the litigation as a whole."[92] Though the court declined to address Plaintiff's MHPAEA claim on summary judgment, much of the work Plaintiff's counsel performed advanced the overall litigation, including Plaintiff's ERISA claim.

---

[87] Opp'n 12–15.
[88] *Id.* at 13.
[89] *Id.* at 13–15.
[90] Reply 10–11.
[91] *See K.S. v. Cigna Health & Life Ins. Co.*, No. 1:22-CV-00004, 2026 WL 752700, at *4 (D. Utah Mar. 17, 2026).
[92] *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)) (cleaned up).

Defendants also ask the court to reduce the billed hours by rejecting specific time entries that only relate to the MHPAEA claim or to work done before the lawsuit was filed.[93] Specifically, Defendants argue that 4.8 hours billed by Mr. King and 27.9 hours billed by Mr. Newton relate solely to discovery, which was only conducted in connection with the MHPAEA claim.[94] Defendants also ask the court to reduce 2.6 hours billed by Mr. King that were incurred prior to the commencement of this action.[95] Plaintiff does not address these arguments or show any reason why the identified time entries should not be reduced. Accordingly, the court reduces Plaintiff's requested attorney's fees by 7.4 hours for Mr. King and 27.9 hours for Mr. Newton.

### D.      Hourly Rate

Finally, Defendants argue that Mr. King's billing rate of $650 per hour is excessive and should be reduced to $500 per hour.[96] They note that several cases in this district have previously reduced Mr. King's rate from $600 per hour to between $400 and $500 per hour.[97] Plaintiff responds that he and his firm are recognized as preeminent attorneys in the field of ERISA litigation and that other courts in this district have previously allowed his rates of $600 to $650 per hour.[98]

"To determine the amount of attorney's fees to award under ERISA, the court applies the lodestar method, which is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"[99] "The reasonable hourly rate is the 'prevailing [rate] in the

---

[93] Opp'n 13–15.

[94] *Id.*

[95] *Id.* at 15.

[96] Opp'n 16–17.

[97] *Id.*

[98] Reply 9–10.

[99] *Carlile v. Reliance Standard Life Ins. Co.*, No. 2:17-CV-01049, 2019 WL 8128545, at *1 (D. Utah Dec. 31, 2019), *aff'd*, 988 F.3d 1217 (10th Cir. 2021) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

community for similar services by lawyers of reasonably comparable skill, experience and reputation.'"[100] "The court may consider a number of factors in determining whether an hourly rate is reasonable, including the affidavits of counsel for the party claiming fees, affidavits in addition to the attorney's own affidavits, and even the court's own knowledge."[101]

Mr. King is exceptionally experienced, having practiced law for over 40 years and, more importantly, having specialized in ERISA cases for nearly three decades.[102] His requested rate of $650 represents the hourly rate that he often currently bills when representing clients on non-contingent, hourly basis.[103] The court notes, as Defendants point out, that Mr. King's rate has been reduced numerous times in this district.[104] However, "a court's determination of an hourly rate 'should reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time the services were performed.'"[105] The most recent case cited by Defendants in which Mr. King's rate was reduced below $600 was decided in February 2024.[106] Since then, the majority of courts to address the issue have allowed a rate of $600 per hour.[107]

---

[100] *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)) (alteration in original).

[101] *Id.*

[102] King Decl. ¶ 3, ECF No. 84-1, filed Feb. 16, 2026.

[103] *Id.* ¶¶ 9, 12–13.

[104] *See, e.g.*, *K.D. v. Anthem Blue Cross*, No. 2:21-CV-343-DAK-CMR, 2024 WL 840659, at *1 (D. Utah Feb. 28, 2024) (awarding Mr. King a $500 hourly rate); *Theo M. v. Beacon Health Options, Inc.*, No. 2:19-CV-00364-JNP-DBP, 2023 WL 4826771, at *6 (D. Utah July 27, 2023) (same); *see also D.K. v. United Behav. Health*, No. 2:17-CV-01328-DAK, 2021 WL 4060937, at *3 (D. Utah Sept. 7, 2021), *aff'd*, 67 F.4th 1224 (10th Cir. 2023) (awarding Mr. King a $450 hourly rate).

[105] *Raymond M.*, 2021 WL 764077 at *3 (quoting *Stoedter v. Gates*, 320 F. Supp. 3d 1265, 1280 (D. Utah 2018)).

[106] Opp'n 16; *K.D. v. Anthem Blue Cross*, 2024 WL 840659, at *1.

[107] *See C.J. v. United Healthcare Ins. Co.*, No. 2:22-CV-00092-DBB-CMR, 2026 WL 1678251, at *7 (D. Utah June 10, 2026) (awarding Mr. King a $600 hourly rate); *K.S. v. Cigna Health & Life Ins. Co.*, No. 1:22-CV-00004, 2026 WL 752700, at *3 (D. Utah Mar. 17, 2026) (same); *Johnson v. Deseret Mut. Benefit Adm'rs*, No. 2:22-CV-330-HCN-JCB, 2025 WL 2194060, at *2 (D. Utah Aug. 1, 2025) (same); *M.S. v. Premera Blue Cross*, No. 2:19-CV-199-DAK, 2025 WL 1370215, at *2 (D. Utah May 12, 2025) (same); *L.L. on behalf of J.L. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 2:22-CV-00208-DAK, 2024 WL 3899380, at *2 (D. Utah Aug. 21, 2024) (same). *But see J.H. v. United Behav. Health*, No. 2:23CV00190-JNP-CMR, 2026 WL 632244, at *4 (D. Utah Mar. 6, 2026) (awarding $650 per hour rate).

16

Indeed, just last month, this court approved a rate of $600 per hour for Mr. King. Neither

Plaintiff nor Defendants point to any developments since then that would affect that rate.

Accordingly, the court approves a rate of $600 per hour for this case.[108]

## ORDER

Plaintiff's [84] Motion for Attorney's fees is GRANTED in part. Defendants are

ORDERED to pay:

- $356,718.00 in benefits owed;

- $97.73 in prejudgment interest per day for each day after the midpoint of the treatment

  period, until the full amount of benefits owed has been paid;

- $66,265 in attorney's fees; and

- $400 in costs.


Signed July 14, 2026.

BY THE COURT

_____
David Barlow
United States District Judge

---

[108] *C.J. v. United Healthcare Ins. Co.*, 2026 WL 1678251, at *7.

17